**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| ST PAUL FIRE and MARINE INSURANCE COMPANY | : : : | |
| and | : : | **OPINION** |
| SEENA INTERNATIONAL INC., | : : | Civil Action No. 07-4802 (WHW) |
| Plaintiffs, | : : : | |
| v. | : : | |
| AVH TRUCKING LLC d/b/a GVS Trucking Inc. , | : | |
| Defendant | | |

<u>**Walls, Senior District Judge**</u>

 Plaintiffs St. Paul Fire and Marine Insurance Company ("St. Paul") and Seena International Inc. ("Seena") move for entry of default judgment, pursuant to Federal Rule of Civil Procedure 55(b), against defendant AVH Trucking LLC which does business as GVS Trucking Inc. ("GVS").  GVS has not opposed this motion.  Pursuant to Federal Rule of Civil Procedure 78, the motion is decided without oral argument and is granted.

   **FACTS AND PROCEDURAL BACKGROUND**

 Plaintiff St. Paul, a Minnesota Corporation, is an insurance company with its principal place of business in Minneapolis, Minnesota.  St. Paul is the insurer of the co-plaintiff Seena, a New York corporation with its principal place of business in Yaphank, New York.  Defendant GVS is a New Jersey Corporation with its principal place of business in East Rutherford, New Jersey.

NOT FOR PUBLICATION

Plaintiff Seena, contracted with defendant GVS for the shipment and delivery of a container of 1,385 cartons of denim jean shorts (the "Container") from Thailand to Seena's warehouse in Yaphank, New York. (Decl. of William O'Malley ¶ 1 (Dkt. Entry No. 9-3, filed October 2, 2008) ("O'Malley Decl.").)  On February 27, 2007,  the Container was delivered to GVS, and on that same date a bill of lading was issued by GVS to Seena which verified that the Container was delivered to the defendant in good order and condition.  (O'Malley Decl. Ex. A (Bill of Lading)).

The shipment was then loaded and picked up by a truck owned and operated by defendant GVS.  En route to its final destination, the defendant drove its truck, with the Container attached, to the defendant's premises located at 1511 Tonelle Avenue, North Bergen, New Jersey and parked the truck and the Container on the premises.  (Compl. at ¶ 11.)  On or about March 23, 2007, the Container and its contents were stolen from the premises.  (Id. at ¶ 12.)  Neither the Container nor its contents have been recovered.  (Id. at ¶ 14.)

 Shortly thereafter, Seena presented a claim for $129,282.73, the value of the lost goods, to St. Paul.  (O'Malley Decl Ex. B (Statement of Claim).)  St. Paul investigated the claim, and in accordance with the terms of its insurance policy with Seena, St. Paul fully reimbursed Seena, less a $1,000 deductible paid by Seena.  (Compl. ¶ 15.)

The plaintiffs filed the complaint in this matter on October 4, 2007 and service was made personally on Gurdev Singh, the registered agent and owner of GVS, on November 24, 2007. (Decl. of Stuart M. Goldstein ¶ 2 (Dkt. Entry No. 9-2, filed October 2, 2008) ("Goldstein Decl.").)  The defendant did not answer or otherwise respond to the complaint.  On January 23, 2008 the plaintiffs requested that the Clerk of the Court enter default against the defendant.

NOT FOR PUBLICATION

Default was entered on January 25, 2008.  On March 24, 2008, the plaintiffs filed this motion requesting entry of default judgment against the defendant.  The notice of motion and all supporting papers were served on the defendant by first class mail.  The plaintiffs now seek to recover money damages for the loss of the goods in the principal amount of $129,282.73, plus pre-judgment interest accruing from March 23, 2007 until March 23, 2008 at a rate of 5% per annum, for total interest of $6,464.13.  The plaintiffs also seek to recover the $350 filing fee for this action, for a total recovery of $136,096.86.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 55(b)(2) governs the Court's entry of default judgment. The party against whom default judgment is requested must have been properly served with process. Fed. R. Civ. P. 55(b)(2); Local Union No. 98, Int'l Bd. of Elec. Workers v. Cableco, Inc., No. 99-755, 1999 WL 269903, at * 1 (E.D. Pa. Apr. 28, 1999).  Before a default judgment may be entered by the court, the moving party must have obtained an entry of default.  Fed. R. Civ. Proc. 55(a).  See 10A Wright, Miller, & Kane, Federal Practice and Procedure, § 2682, at 13 (3d ed.1998).

Entry of default and proper service do not automatically entitle a plaintiff to a default judgment. See, e.g., Cableco, Inc., 1999 WL 269903, at * 1 (citing Petrucelli v. Bohringer & Ratzinger, 46 F.3d 1298, 1303 (3d Cir. 1995)).  The district court has the discretion to enter default judgment, although entry of default judgment is disfavored as decisions on the merits are preferred where practicable.  Hritz v. Woma Corp., 732 F.2d 1178, 1180-81 (3d Cir. 1984). When determining if a default judgment should be entered, a court should consider the following factors: the potential amount of damages; whether issues of material fact or substantial public

-3-

NOT FOR PUBLICATION

concern are implicated; whether the default is primarily technical; whether the moving party has been substantially prejudiced by the delay involved; whether the grounds for default are clearly established or in doubt; whether the default was attributable to good faith, mistake, or excusable neglect; and whether the court may later be obliged to set aside the default.  Franklin v. Nat'l Maritime Union of Am., No. 91-0480, 1991 WL 131182, at *1 (D.N.J. July 16, 1991), aff'd, 972 F.2d 1331 (3d Cir. 1992) (citing 10 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 2685 (2d ed. 1983)).

Although the Court should accept as true the well-pleaded factual allegations of the complaint, the Court need not accept the moving party's legal conclusions or factual allegations relating to the amount of damages.  Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990) (citing Wright, Miller & Kane, supra, § 2688.  Before granting a default judgment, the Court must first ascertain whether "the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law."  Directv, Inc. v. Asher, 03-cv-1969, 2006 WL 680533, *1 (D.N.J. March 14, 2006) (citing 10 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 2688 (2d ed. 1998)).  The Court must also "conduct its own inquiry 'in order to ascertain the amount of damages with reasonable certainty.'"  Int'l. Assoc. of Heat & Frost Insulators v. South Jersey Insulation Servs., 05-cv-3143, 2007 WL 276137, *1 (D.N.J. Jan. 26, 2007) (quoting In re Industrial Diamonds, 119 F. Supp. 2d 418, 420 (S.D.N.Y. 2000)).

**NOT FOR PUBLICATION**

## DISCUSSION

**A.**     **Liability**

The Court is satisfied that the defendant had ample notice of the complaint and of the

motion for default judgment and chose not to respond.  The record indicates that defendant was

properly served and default has been entered by the Clerk.  Furthermore, the record indicates that

the defendant was served with notice of this motion for default judgment and with supporting

documents via first class mail.

Accordingly, the Court will treat the allegations as to liability in the complaint as true and

admitted by the defendant.  The plaintiffs have alleged that the acts and omissions of the

defendant resulted in the loss of the Container and consequently the defendant is liable to the

plaintiffs under the Carmack Amendment, 49 U.S.C. § 14706.  The Carmack Amendment reads:

> A carrier providing transportation . . . shall issue a receipt or bill of lading for
> property it receives for transportation under this part.  That carrier . . . [is] liable
> to the person entitled to recover under the receipt or bill of lading.  The liability
>  . . . is for the actual loss or injury to the property caused by . . .  the delivering
> carrier.

49 U.S.C. § 14706 (2005).  Because the defendant provided a valid bill of lading and the material

did not arrive at its final destination, the plaintiffs have established grounds for imposing liability

on the defendant pursuant to 49 U.S.C. § 14706.

**B.**     **Damages**

The Court need not treat allegations of damages as true upon entry of a default judgment.

Comdyne I, 908 F.2d at 1149.  Under Rule 55(b)(2) a district court "may conduct such hearings or

**NOT FOR PUBLICATION**

order such references as it deems necessary and proper" in order to determine the amount of

damages.  Id.

There are certain limited situations, however, where a district court can enter a final

judgment without requiring further evidence of damages.  KPS & Assocs., Inc. v. Designs By

FMC, Inc., 318 F.3d 1, 19 (1st Cir. 2003).  If the damages are for a "sum certain or for a sum

which can by computation be made certain," a further evidentiary inquiry is not necessary.  Fed.

R. Civ. P. 55(b)(1); KPS Assocs., 318 F.3d at 19; Comdyne I, 908 F.2d at 1149.  A claim for

damages is not a "sum certain unless there is no doubt as to the amount to which a plaintiff is

entitled as a result of the defendant's default." KPS Assocs., 318 F.3d at 19.  "Such situations

include actions on money judgments, negotiable instruments, or similar actions where the

damages sought can be determined without resort to extrinsic proof."  Id. at 19-20.

Here the plaintiffs seek three types of damages for: (i) the value of the lost goods; (ii) pre-

judgment interest on the damages; and (iii) the cost of filing this action.  Because plaintiffs have

not submitted evidence that their damages are for a sum certain, the Court will examine the

evidence submitted by plaintiffs in support of each of these claims for damages.

      *i.*        *Damages for the Value of the Lost Goods*

Damages to goods lost in shipping are measured by their market value.  See Eastman

Kodak Co. v Westway Motor Freight, Inc., 949 F.2d 317, 319 (10th Cir. 2003)*.*   It follows that

plaintiffs may recover the market value of the 16,620 garments that were lost in transit.  The 7,392

of the lost garments that had already been sold to retailers should be valued at their sale price.

Invoices submitted by the plaintiffs support plaintiffs' claim that at least 5,016 pieces had been

-6-

 **NOT FOR PUBLICATION**

sold for at least $8 each and at least 2,376 pieces had been sold for at least $10.50 each, for a total

value of $65,076.00.  (O'Malley Decl. Ex. C (Invoices).)

 For the remaining 9,228 unsold garment pieces plaintiff claims a loss of $70,714.33.

Such amount includes the price which the plaintiff paid the manufacturer for the garments along

with the freight, taxes, and insurance paid on those items.   Under the Carmack Amendment,

freight, taxes, fees and insurance can be recovered in addition to the price paid for the commodity.

See American Nat'l. Fire Ins. Co. v. Yellow Freight Syss., Inc., 325 F.3d 924, 933 (7th Cir. 2003).

Plaintiff submitted invoices indicating that Seena had purchased 9,228 unsold garments from the

manufacturer for $48,556.80.[1]  (O'Malley Decl. Ex. C (Invoices).)    The cost of freight pro-rated

to cover these items was equal to $2,187.04.  (O'Malley Decl. Ex. B (Statement of Claim).)    The

garments, that were worth $50,743.84, were insured at a rate of 120% for a value of $60,892.61.

Duty was paid on that amount, at a rate of 16.6%, for a total value of $70,714.33.  (O'Malley

Decl. Ex. D.)

 The aggregate loss of both sold and unsold items of $135,790.33 after adjustment for

unincurred loss of one percent totaled $129,282.73.[2]   (Id.)  The plaintiffs have included the bill of

lading demonstrating that the defendant was aware of the precise amount of cargo that was

---

 [1] The enclosed invoices reflect all of the stolen items - both those items that plaintiffs had
sold at the time of theft and those that were unsold.  The total purchase price of the unsold
garments reflects 5,676 garments (10,692 purchased garments less 5,016 sold garments)
purchased at $4.80 and 3,552 garments (5,928 purchased garments less 2,376 sold garments)
purchased at $6.00.  (O'Malley Decl. Ex.C (Invoices).)

 [2] This total value reflects the value of the sold goods ($65,076.00) plus the value of the
unsold goods ($70,714.33) less unincurred cost of 1% of $65,076.00 ($6,507.60).  (O'Malley Decl
Ex. B (Statement of Claim).)

 **NOT FOR PUBLICATION**

loaded.  Furthermore, the Court is satisfied that the invoices submitted by the plaintiffs for both

the sold and unsold garments support the proper amount of damages claimed by plaintiff.  Default

judgment is granted in the amount of $129,282.73.

       *ii.*       *Pre-judgment Interest on Damages for the Value of the Lost Goods*

       Plaintiffs assert that they are entitled to pre-judgment interest on the damages for the value

of the lost goods, calculated at a rate of 5% per annum from March 23, 2007 (the date the theft

occurred) until March 23, 2008, the date of the filing of the motion for default judgment.  Under

New Jersey law, "the award of prejudgment interest for claims arising in contract is subject to the

discretion of the trial court." Cooper Distrib. Co. v. Amana Refrigeration, Inc., 63 F.3d 262, 284

(3d Cir. 1995) (citing Meshinsky v. Nichols Yacht Sales, Inc., 110 N.J. 464, 478 (1988)).  Pre-

judgment interest is awarded in order "to indemnify the claimant for the loss of what the moneys

due him would presumably have earned if the payment had not been delayed." Id.  (quoting

Ellmex Constr. Co. v. Republic Ins. Co. of Am., 202 N.J. Super. 195, 212-13 (App. Div. 1985),

cert. denied, 103 N.J. 453 (1986)).  The "basic consideration [in awarding pre-judgment interest]

"is that the defendant has had the use, and the plaintiff has not, of the amount in question; and the

interest factor simply covers the value of the sum awarded for the prejudgment period during

which the defendant had the benefit of monies to which the plaintiff is found to have been earlier

entitled." County of Essex v. First Union Nat'l Bank, 186 N.J. 46, 61 (2006) (quoting Rova Farms

Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 506 (1974)).

       Here, because the plaintiffs have been denied the use of their money from the moment the

goods were stolen, the Court is satisfied that awarding pre-judgment interest is appropriate.

Plaintiff is entitled to the pre-judgment interest on the damages from the theft on March 23, 2007

**NOT FOR PUBLICATION**

until the date of the filing of this motion.  In federal question cases, "the rate of pre-judgment interest is committed to discretion of the district court."  Sun Ship, Inc. v. Matson Navigation Co., 785 F.2d 59,63 (3d Cir. 1986).  In exercising its discretion the Court may look to the post-judgment interest rate set out in 28 U.S.C. § 1961.  Id.  Under 28 U.S.C. § 1961, the post-judgment interest is 5% per annum.[3]   Accordingly, the pre-judgment interest on $129,282.73 will be calculated at a rate of 5% per annum and default judgment for pre-judgment interest on the damages for the value of the lost goods will be entered in the total amount of $6,464.13.

*iii.    Costs*

Pursuant to Federal Rule of Civil Procedure 54(d)(1), costs other than attorney's fees should be allowed to the prevailing party on a motion for default judgment.  According to Local Civil Rule 54.1, in order to recover costs, the prevailing party shall within thirty days of this opinion serve on the attorney for the adverse party and file with the Clerk a Bill of Costs and Disbursements.  Here, plaintiffs claim they incurred costs in the amount of $350 for the filing of this action.  (Goldstein Decl. at ¶ 6.)   Assuming that plaintiffs serve the appropriate Bill of Costs and Disbursements to the defendant and the Clerk and comply with the other provisions of Local Rule 54.1, default judgment is granted in the amount of $350.  See Local Civil Rule 54.1.

**CONCLUSION**

For the preceding reasons, the Plaintiff's motion for judgment by default is granted. Judgment is entered in the amount of $136,096.86 .

---

[3]  Post-judgment interest is calculated at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the week preceding the date the theft of the merchandise occurred.  28 U.S.C. § 1961 (2000). The 1-year constant maturity Treasury yield for the week preceding March 23, 2007 was 4.93%. See http:/www.federalreserve.gov/releases/h15.

**NOT FOR PUBLICATION**

**s/William H. Walls**
United States Senior District Judge

**Appearances**

Stuart M. Goldstein, Esq.
Willow Ridge Executive Office Park
750 Route 73 South, Suite 301
Marlton, NJ 08053
    Attorney for St. Paul Fire and Marine Insurance Company and Seena International Inc.